UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEVEN O. SANCHEZ,

                         Plaintiff,                      **COMPLAINT**

                     -against-

HOME DEPOT U.S.A., INC.,                   <u>DEMAND FOR TRIAL BY JURY</u>

                         Defendant.
------------------------------------------------------------X

Plaintiff, STEVEN O. SANCHEZ, by and through his attorneys, Helen F. Dalton & Associates, P.C., hereby complains of the Defendants, and alleges upon personal knowledge and information and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff STEVEN O. SANCHEZ brings this action against HOME DEPOT U.S.A., INC. to recover damages for, among other things, the Defendant's discrimination of Plaintiff STEVEN O. SANCHEZ on the basis of his disability, and wrongful termination of the Plaintiff in violation of (i) Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et. seq. ("Title VII"); (ii) the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. Section 12101 et seq., as amended by the ADA Amendments Act of 2008 ("ADAAA"), 110 P.L. 325, 122 Stat. 3553; (3) the New York State Human Rights Law ("NYSHRL"); (4) the New York City Human Rights Law ("NYCHRL") and its related rules and regulations, arising out of Plaintiff's employment by Defendant HOME DEPOT U.S.A., INC.

2. As a result of the Defendant's violations of the Federal and New York State anti-discrimination laws delineated herein, Plaintiff seeks compensatory damages and liquidated

1

damages in an amount exceeding $100,000.00. Plaintiff also seeks interest, attorneys' fees, costs, and all other legal and equitable remedies that this Court deems appropriate and equitable.

## JURISDICTION AND VENUE

3. Jurisdiction of the subject matter of this action is established in this Court under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et. seq. ("Title VII"); and the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. Section 12101 et seq., as amended by the ADA Amendments Act of 2008 ("ADAAA"), 110 P.L. 325, 122 Stat. 3553.

4. This Court has supplemental jurisdiction over all other state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the unlawful acts alleged herein giving rise to the claims were committed within this Court's jurisdiction.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202.

7. On or about October 29, 2019, Plaintiff filed a discrimination claim with the U.S. Equal Employment Opportunity Commission ("EEOC") and requested a Right to Sue Letter.

8. On December 2, 2020, the EEOC issued a Notice of Right to Sue on Plaintiff's behalf. A copy of Plaintiff's Right to Sue Letter was issued to Defendant as well.

## THE PARTIES

9. Plaintiff STEVEN O. SANCHEZ ("Plaintiff"), residing at 4856 47 Street, Woodside, New York was employed by Defendant to work at Defendant HOME DEPOT U.S.A., INC. from

in or around February 2006, until Plaintiff's wrongful termination by Defendant in or around November 2018.

10. At the time of Plaintiff's wrongful termination in or about November 2018, Plaintiff was serving as Defendant's Assistant Store Manager at its premises located at 50-10 Northern Blvd., Long Island City, New York.

11. Upon information and belief, Defendant HOME DEPOT U.S.A., INC. was and still is a foreign corporation existing under and by virtue of the Laws of the State of Delaware.

12. At all times relevant hereto, Defendant HOME DEPOT U.S.A., INC. was and still is a foreign corporation authorized to do, conduct, and transact business in the State of New York.

13. Upon information and belief, Defendant HOME DEPOT U.S.A., INC. is a business engaging in interstate commerce with annual sales exceeding $100,000,000.00.

14. At all times relevant hereto, Defendant HOME DEPOT U.S.A., INC. has and maintains one registered principle executive office, located at 2455 Paces Ferry Road, Atlanta, Georgia.

15. At all times relevant hereto, Defendant HOME DEPOT U.S.A., INC. employs approximately three hundred or more employees throughout various states, and at several different locations.

16. At all times relevant hereto, the individual officers, directors, supervisors, managers, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, supervisors, managers, employees and/or agents of HOME DEPOT U.S.A., INC. (hereinafter referred to as, "Defendant").

## STATEMENT OF FACT

17. Plaintiff was hired by the Defendant on or about January 9, 2006, to work and serve as an associate employee at Defendant's premises located at 50-10 Northern Blvd., Long Island City, New York ("the premises").

18. Throughout the course of Plaintiff's employment by Defendant, Defendant twice promoted Plaintiff due to Plaintiff's competence and excellent work performed for Defendant; Plaintiff's first promotion came approximately eight (8) months into Plaintiff's employment in or around September 2006; and Plaintiff's second promotion came approximately ten (10) years later in or around January 2016, when Defendant granted Plaintiff a promotion to the position of Assistant Manager at its premises located at 50-10 Northern Blvd., Long Island City, New York.

19. Plaintiff's job duties included, among other things, serving as overnight manager, receiving and directing the Defendant's trucks, unloading merchandise from the trucks into the store's premises, unpacking merchandise, and responsibility relating to closing up the premises.

20. Additionally, one of Plaintiff's many duties as Assistant Manager was arming/disarming of the Defendant's exterior alarm system ("exterior alarm") around Defendant's store during overnight shifts. Each morning, Plaintiff unarmed the exterior alarm and each night Plaintiff rearmed/reset the alarm to become activated.

21. Plaintiff's responsibilities relating to handling of the exterior alarm was separate and apart from the Defendant's other active alarm system relating to Defendant's corporate vault ("vault alarm"), which was a Supervising Manager's responsibility, of which there were many, rather than Plaintiff's.

22. Upon information and belief, one of Plaintiff's Store Supervising Managers, was an individual named Hazem Elsrashidi ("Mr. Elsrashidi").

23. In or around June 2016, because Plaintiff's Supervising Manager, Mr. Elsrashidi, was frequently coming in to work late and leaving early, Mr. Elsrashidi unilaterally delegated Plaintiff with additional responsibilities relating to handling the vault alarm and asked Plaintiff if Plaintiff could provide "cover" any time he could not perform such duties.

24. At times, Plaintiff provided such cover for Mr. Elsrashidi and/or Plaintiff's other Supervising Managers even though handling the vault alarm was not a part of Plaintiff's responsibilities, and was not one typically given to an employee of Plaintiff's status.

25. One late night in or around June 7, 2016, while Plaintiff was working at the premises, Mr. Elsrashidi asked Plaintiff to handle the vault alarm while Mr. Elsrashidi was away.

26. However, upon information and belief, at the conclusion of that night shift, after Plaintiff had completed his duty of arming the exterior alarm and attempted to provide cover for the vault alarm for Mr. Elsrashidi, the vault alarm did not properly arm itself as it should have.

27. As a result, another one of Plaintiff's Supervising Managers (upon information and belief, Mrs. Shandel Hope) reprimanded the Plaintiff for said failure, despite the fact that Plaintiff was not at fault and that this was not even Plaintiff's responsibility.

28. By July 2016, Defendant was aware that its store premises had been experiencing major issues related to its alarm systems. By way of example, over the next several weeks or longer, the alarm system would frequently, randomly siren loud noises on its own, at least three or four times per day, every day.

29. Each such time, employees had to stop their work, go to the panel, and reset the alarm again. Many different potential theories were circulating around Defendant's store as to the potential cause (i.e., the wind, the guard mechanisms, etc.)

30. For several weeks, Defendant was aware of the issues related to its alarm systems but neglected to remedy or repair the issues relating to its alarm systems. Specifically, on or around August 5, 2016, there was an issue relating to an alarm system that Defendant neglected to have repaired ("the August 5, 2016 incident").

31. Plaintiff first complained of the Defendant's faulty alarm systems to Defendant's Active Protection Manager (upon information and belief, to a Mrs. Salma Zarghami, or to a Shenell Leighton, Defendant's District Manager), whose duties consisted of maintaining and monitoring premises protection and the Defendant's alarm systems.

32. Approximately one week later, in August 2016, Defendant's Human Resources Department ("HR") held a meeting with Plaintiff to discuss the August 5, 2016 incident, during which, Plaintiff explained to HR how Defendant's alarms were having issues.

33. HR told Plaintiff, "don't worry about it. . . we know the alarm has issues."

34. Plaintiff informed his Supervising Manager (upon information and belief, Mr. Elsrashidi) of the August 2016 meeting with HR, who then reassured Plaintiff that, "it's not a big deal, don't worry about what happened with the alarms, we know it should have been fixed."

35. Mr. Elsrashidi directed the Plaintiff to issue a written statement to HR to that effect, which Plaintiff did submit, and which evidenced the ongoing issues the Defendant was experiencing at the premises due to its faulty alarm systems.

36. In or around late August 2016, HR opened an investigation into the alarm issues and the August 5, 2016 incident.

37. In or around August 31, 2016, Plaintiff became badly injured in an automobile collision.

38. As a consequence, Plaintiff began experiencing extreme pain throughout his body, and sustained serious injuries to his right arm.

39. Plaintiff immediately began seeing doctors for treatment for his injuries. In doing so, Plaintiff obtained medical documentation, including a doctor's note recommending that Plaintiff take time off to recover and begin physical therapy, copies of which were forwarded to Defendant and HR.

40. On or around August 31, 2016, Defendant granted Plaintiff a three-month Short Leave of Absence ("SLOA"), for Plaintiff to continue with his physical therapy. Thus, Plaintiff was out of work from August 2016 through November 2016 to recover from the injuries he sustained.

41. In or around November 2016, Defendant transferred Plaintiff from SLOA, to Long-Term Leave of Absence ("LLOA"), so that Plaintiff could complete his recovery from his injuries prior to Plaintiff returning to work for Defendants.

42. Defendant told Plaintiff that this was so that Plaintiff would not have a disability when he returns to work for Defendant Home Depot again.

43. Each month following Plaintiff's injury, HR asked Plaintiff when he would be returning back to work again.

44. Accordingly, each and every month following Plaintiff's injury, and while Plaintiff was on LLOA, Defendant required Plaintiff to, and Plaintiff actually did, request medical documentation from his doctor(s) which Plaintiff faxed to HR monthly.

45. In or around April 2018, while Plaintiff was on leave, and was regularly providing documentation as to his inability to work, HR called Plaintiff and told Plaintiff that he was being terminated effective immediately.

46. Plaintiff responded by explaining to HR that he was hurt, injured, and still on leave, and that he had been submitting his paperwork to HR as he was directed to.

47. HR then immediately "retracted" its statement informing Plaintiff of the termination of his employment, then told the Plaintiff that the statement informing Plaintiff of the termination of his employment "was a mistake."

48. While still on leave, Plaintiff then underwent a successful corrective surgery to his right arm.

49. In or around November 2018, Plaintiff made a recovery from his injuries and received medical clearance from his doctor to return to work again on condition that Plaintiff refrain from heavy lifting and refrain from working periods of overnight shifts where heavy lifting was involved.

50. While still on leave, Plaintiff contacted HR to discuss his return to work for Defendant.

51. In doing so, while still on leave, Plaintiff requested an accommodation of not working overnight shifts anymore (only day shifts) because of his arm injury.

52. John Minor, of Defendant's HR Department, informed Plaintiff that Plaintiff would "need to step down from his role as Manager" and "take a pay cut" in order to return to work again, which Plaintiff rejected.

53. HR responded to Plaintiff that he would need to return to the same premises where he worked in order to speak to a Manager for an "interview," which Plaintiff did.

54. Upon conclusion of the interview/meeting, HR told Plaintiff that HR would be contacting him shortly.

55. HR then purportedly "reopened the investigation" into the August 5, 2016 incident.

56. Shortly thereafter, HR called the Plaintiff by telephone to inform Plaintiff of the termination of his employment by the Defendant.

57. Plaintiff subsequently received a letter by mail from the Defendant entitled "Progressive Disciplinary Notice," and dated November 19, 2018, which recommended the termination of Plaintiff's employment with Defendant ("the termination letter").

58. Plaintiff's termination letter purported that the August 5, 2016 incident which occurred more than two (2) years earlier, was the reason for the Defendant's termination of Plaintiff's employment.

59. Furthermore, Plaintiff's termination letter purported that the August 5, 2016 incident which occurred more than two (2) years earlier "created a security risk in the store," such that "this conduct violated the company's associate behavior standards."

60. Defendant's sole reason for its decision to terminate the Plaintiff – an isolated incident from two (2) years prior – was merely a pretext for the Defendant's wrongful termination of Plaintiff on account of his disability or perceived disability.

61. Specifically, the two (2) year gap between Plaintiff's termination and an isolated event upon which Defendant's proffered reason purportedly relied – as well as the absence of any finding of intentional misconduct on Plaintiff's part – seriously calls into question the genuineness of Defendant's absurd, putative non-discriminatory reason for Defendant's termination of Plaintiff, a more than ten-year employee who was in constant contact with Defendant relating to his promised return to his position upon recovery from his injury.

62. Plaintiff was terminated upon this purported ground despite the fact that Plaintiff was not given prior notice, warning, or any other disciplinary option, he was just terminated.

63. At the time of Plaintiff's attempt to return from LLOA and back to work in or around November 2018, Plaintiff was able to perform all the essential duties of Assistant Manager with a reasonable accommodation on condition that Plaintiff refrain from heavy lifting and working overnight shifts where heavy lifting was involved.

64. Plaintiff's disability did not impact his ability to fulfill the fundamental requirements of his job so long as he was provided with reasonable accommodations.

65. Prior to terminating Plaintiff's employment, Defendant failed to ever engage in a conversation with Plaintiff regarding what accommodations, if any, Plaintiff would require to perform his job duties.

9

66. At the time of Plaintiff's termination of his employment by Defendants, Plaintiff was qualified to perform the essential functions of his job as Defendant's Assistant Manager.

67. Plaintiff had a good faith, reasonable belief that his condition constituted a disability and that Defendant's termination of Plaintiff constituted an adverse employment action taken against him.

68. Upon information and belief, on account of the severity of Plaintiff's injury and the fact that Plaintiff was still on LLOA, Defendant perceived Plaintiff as disabled, or thought that Plaintiff was, or would be disabled.

69. Defendant's proffered reason for Plaintiff's termination was manufactured as an attempt to avoid liability for Defendant.

70. Plaintiff's attempts to return to work for Defendants in or around November 2018 were ignored or thwarted by the Defendant because of Plaintiff's disability.

71. Plaintiff was treated unfairly by being terminated by Defendant because of his disability.

72. Plaintiff was discriminated against because of his disability.

73. In the approximately two (2) years prior to Plaintiff's termination, nothing was said to Plaintiff about his ability/inability to return to work; to the contrary, Plaintiff had complied with Defendant's requests to produce all necessary medical documentation, including a doctor's note which recommended Plaintiff's return to work

74. Despite Plaintiff having produced necessary medical documentation, including a doctor's note recommending Plaintiff's return to work, Plaintiff was not accommodated, but rather, was terminated due to his actual or perceived disability.

75. Plaintiff was disciplined differently than other employees at the Defendant were, especially after Plaintiff took medical leave, including, but not limited to, different standards of conduct, unequal disciplinary measures, and unduly harsh scrutiny.

76. The discrimination by Defendant against Plaintiff adversely affected the terms and conditions of Plaintiff's employment culminating in Plaintiff's unlawful termination.

### AS AND FOR A FIRST CAUSE OF ACTION
**(DISCRIMINATION ON THE BASIS OF DISABILITY UNDER THE ADA, AS AMENDED BY THE 2008 ADAA)**

77. Plaintiff STEVEN O. SANCHEZ repeats, realleges, and incorporates by reference each and every allegation, with the same force and effect as though more fully set forth at length herein.

78. The aforesaid acts by Defendant HOME DEPOT U.S.A., INC., its officers, directors, supervisors, managers and/or employees, violated Plaintiff's rights as provided under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. Section 12101 et seq., as amended by the ADA Amendments Act of 2008 ("ADAAA"), at 110 P.L. 325, 122 Stat. 3553 (2008).

79. As a consequence of the foregoing misconduct of Defendant HOME DEPOT U.S.A., INC., Plaintiff sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss, including but not limited to, loss of benefits, insurance coverage, and/or other accrued fringe benefits.

80. As a consequence of the foregoing misconduct of Defendant HOME DEPOT U.S.A., INC., Plaintiff has been damaged and is entitled to compensatory damages and punitive damages in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### (DISCRIMINATION ON THE BASIS OF DISABILITY UNDER TITLE VII)

81. Plaintiff STEVEN O. SANCHEZ repeats, realleges, and incorporates by reference each and every allegation, with the same force and effect as though more fully set forth at length herein.

82. The aforesaid discriminatory acts by Defendant HOME DEPOT U.S.A., INC., its officers, directors, supervisors, managers and/or employees, perpetrated against Plaintiff because of his disability, violated Plaintiff's rights as provided pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et. seq. ("Title VII").

83. Plaintiff has established that Defendant engaged in a practice of discrimination, in the manner in which it treated the Plaintiff.

84. Defendant failed to accommodate Plaintiff according to the ADA, failed to engage in any process to determine what reasonable accommodation could be made to Plaintiff, and instead terminated him due to his disability.

85. A motivating factor for the treatment and termination was on account of Plaintiff's disability.

86. Plaintiff has been caused to suffer severe emotional and economic damages as a result of this conduct.

87. Defendant discriminated against Plaintiff with respect to his employment terms, working conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964.

88. But for Plaintiff's disability, Plaintiff would not have been subjected to discrimination or ultimately, termination.

89. Title VII makes it unlawful for an employer to discharge any individual because of such individual's disability.

90. Defendant acted knowingly and willfully in violation of Title VII.

91. Defendant violated Title VII by discriminating against Plaintiff on the basis of his disability inasmuch as Defendant engaged in a course of conduct, as stated above which collectively resulted in Plaintiff's termination.

92. As a proximate cause of Defendant's discrimination against Plaintiff, Plaintiff has suffered and continue to suffer substantial loss of compensation, all to Plaintiff's damages in an amount to be determined at trial.

93. As a consequence of the foregoing misconduct of Defendant, Plaintiff sustained conscious pain and suffering, great mental distress, and humiliation, and incurred economic loss.

### AS AND FOR A THIRD CAUSE OF ACTION
### (DISCRIMINATION ON THE BASIS OF DISABILITY UNDER THE NYSHRL)

94. Plaintiff STEVEN O. SANCHEZ repeats, realleges, and incorporates by reference each and every allegation, with the same force and effect as though more fully set forth at length herein.

95. The New York State Human Rights Law, Article 15 of the New York Executive Law ("NYSHRL"), 15 N.Y. Exec. Law Section 290, et. seq., prohibits discrimination based upon an individual's disability by employers.

96. In violation of the NYSHRL, Defendant discriminated against the Plaintiff on the basis of his disability by, among other things, subjecting him to harassment and terminating the employment of Plaintiff.

97. Defendant employs four (4) or more persons and are thus an "employer" covered by the Human Rights Law.

98. Defendant violated the New York State Human Rights Law by discriminating against Plaintiff on basis of his disability inasmuch as Defendant engaged in a course of conduct, as stated above which collectively resulted in Plaintiff's termination.

99. Defendant's conduct was done in conscious disregard of Plaintiff's rights in violation of New York State Human Rights Law, New York Executive Law §290 *et seq.*

100. Therefore, Plaintiff is entitled to back pay and front pay, lost past and future earnings, non-pecuniary damages for pain and suffering relating to the emotional harm Plaintiff suffered and injunctive relief.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (DISCRIMINATION ON THE BASIS OF DISABILITY UNDER THE NYCHRL)

101. Plaintiff STEVEN O. SANCHEZ repeats, realleges, and incorporates by reference each and every allegation, with the same force and effect as though more fully set forth at length herein.

102. In violation of the NYCHRL, Defendant discriminated against Plaintiff on the basis of his disability by, among other things, subjecting Plaintiff to continued harassment on the basis of his disability and terminating the employment of the Plaintiff.

103. Defendant employs more than one person and thus is a covered "employer" under New York City Adm. Code.

104. Defendant violated the New York City Human Rights Law, New York City Adm. Code §8-107 *et seq.* by discriminating against Plaintiff on the basis of his disability inasmuch as Defendant engaged in a course of conduct, as stated above which collectively resulted in Plaintiff's termination.

105. Defendant failed to engage in any interactive process or cooperative dialogue with the Plaintiff to determine what reasonable accommodation, if any, could be made to the Plaintiff, and instead terminated him due to his disability.

106. Defendant failed to engage in good faith with Plaintiff any written or oral dialogue concerning the Plaintiff's accommodation needs; potential accommodations that may address the Plaintiff's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the Defendant.

107. Defendant's conduct was done in conscious disregard of Plaintiff's rights in violation of New York City Human Rights Law, New York City Adm. Code §8-107 *et seq.*

108. Therefore, Plaintiff is entitled to back pay and front pay, lost past and future earnings, non-pecuniary damages for pain and suffering relating to the emotional harm Plaintiff suffered and injunctive relief.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (EMOTIONAL DISTRESS)

109. Plaintiff STEVEN O. SANCHEZ repeats, realleges, and incorporates by reference each and every allegation, with the same force and effect as though more fully set forth at length herein.

110. The aforesaid acts by the Defendant, its officers, directors, supervisors, managers and/or employees, violated Plaintiff's rights by intentionally, recklessly, or negligently inflicting upon Plaintiff emotional distress.

111. Defendant sought to terminate Plaintiff in such as way as to inflict emotional distress insofar as, among other things, Defendant promised Plaintiff a return to his original employment position upon his recovery from his injury, and required Plaintiff to follow up with Defendant, monthly, by submitting and resubmitting medical documentation indicating the progress thereof

to which Plaintiff complied without; and furthermore, following Plaintiff's termination, Defendant continued to inflict emotional distress upon Plaintiff by seeking to terminate Plaintiff's insurance and all benefits while knowing of Plaintiff s condition and situation.

112. As a consequence of Defendant's intentional, reckless, or negligent infliction of emotional distress upon Plaintiff, Plaintiff has sustained conscious pain and suffering, great mental distress, shock, fright and humiliation, and other damage, including but not limited to, loss of potential income and other incurred monetary loss.

113. As a consequence of the foregoing misconduct of the Defendant, Plaintiff has been damaged in the sum to be determined at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be granted:

a. On Plaintiff's First Cause of Action for unlawful disability discrimination in violation of the ADA as amended, *inter alia*, back pay, front pay, the value of lost benefits to be determined at trial, together with compensatory damages and punitive damages in amounts to be determined at trial;

b. On Plaintiff's Second Cause of Action for unlawful disability discrimination in violation of the Title VII, *inter alia*, back pay, front pay, the value of lost benefits to be determined at trial, together with compensatory damages and punitive damages in amounts to be determined at trial, but which are believed to exceed applicable Title VII caps on such damages;

c. On Plaintiff's Third Cause of Action for unlawful disability discrimination in violation of the NYSHRL, *inter alia*, back pay, front pay, the value of lost benefits and compensatory damages in amounts to be determined at trial;

d. On Plaintiff's Fourth Cause of Action for unlawful disability discrimination in violation of the NYCHRL, *inter alia*, back pay, front pay, the value of lost benefits to be determined at trial, together with punitive damages in an amount to be determined at trial;

e. On Plaintiff's Fifth Cause of Action for the Defendant's infliction of emotional distress unto the Plaintiff, *inter alia*, back pay, front pay, value of lost benefits to be determined at trial, compensatory damages in amounts to be determined at trial, equitable restitution to make Plaintiff whole for the loss of wages and benefits, with interest from the date of Plaintiff's termination, along with the costs of health insurance Plaintiff secured to replace the health insurance denied to him, and to reimburse Plaintiff for out-of-pocket costs for medical claims or expenses that would have been paid in whole or in part as if Plaintiff had continued to participate in Defendant's health benefits plan;

f. Declaring that Defendant violated the aforementioned statutes;

g. That Defendant, their agents, employees, officers, and successors in interest, and those acting in concert with Defendants, be enjoined from discriminating on any basis forbidden by the NYSHRL or the NYCHRL;

h. Awarding Plaintiff prejudgment and post-judgment interest;

i. Awarding Plaintiff the costs of this action together with reasonable attorney's fees; and

j. For such other or further relief as may be just, proper, or equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: This 30th day of December 2020.

Roman Avshalumov, Esq.
Helen F. Dalton & Associates, P.C.
*Attorneys for Plaintiff*
80-02 Kew Gardens Road, Suite 601
Kew Gardens, NY 11415
Phone (718) 263-9591
Fax (718) 263-9598

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN O. SANCHEZ,

                Plaintiff,

-against-

HOME DEPOT U.S.A., INC.,

                Defendant.

**SUMMONS & VERIFIED COMPLAINT**

**HELEN F. DALTON & ASSOCIATES, P.C.**
*Attorneys for Plaintiff*
80-02 Kew Gardens Road, Suite 601
Kew Gardens, NY 11415
Phone (718) 263-9591
Fax (718) 263-9598

**TO:**

**HOME DEPOT U.S.A., INC.**
2455 PACES FERRY ROAD
ATLANTA, GEORGIA 30339-4053

80 STATE STREET
ALBANY, NEW YORK 12207-254